Good morning, Your Honors. May it please the Court, Maureen Shanahan for Appellant Johnny Cordova. And I have to apologize for my tardiness and appreciate it. Oh, no problem. Just pull that microphone down, folks, so we can hear you. We wouldn't have known if you hadn't told us. Well, this case has had a long, long hard run, I guess, is all I appreciate that we're back here in front of the Court again. And I do want to focus only on a few points. I've written a lot, and I probably could go on forever because I'm committed to the case. But the key focus on this is not on whether or not my client was advised of the plea. That's a given. We know he actually, at some point, was told that there was a 12-year offer. There's two parts where counsel was deficient, timeliness and full disclosure of the extent of the plea. Timing was very critical in this case. And it factored into how my client determined whether or not he should, you know, accept the plea or not, and his supposed vehement response initially. And the problem is, is that he, had he been told at the time when the offer was made, in a short period of time, there's no clear evidence as to when it was made. Well, I'm not sure. I mean, we're now, you're now back after a full evidentiary hearing and we've got a pretty complete record of the facts, and we've got expressed factual findings, including an adverse credibility finding that your client was not truthful, but the other witnesses were. Correct. If we review this record in the light most favorable to support the district court's factual findings, we have a pretty good idea that the plea was conveyed shortly after it Your client immediately rejected it because he didn't want to do 12 years, and thereafter they tried, through their motion, to get the charges dismissed on legal grounds, but your client took the chance in going to that hearing that if he lost it, the plea was conditional or had a term limit on it. And that's the state of the factual record. It's really a credibility determination, and the district court believed the lawyer and disbelieved your client. It's unfortunate that this case is here many, many years later, and the lawyer, being very honest, says, you know, I can't remember. All I can do is tell you that I had a firm practice that I would convey any offer and its terms to my client just as soon as I got it. So the judge says, well, that's got to be good enough. If I may first answer Justice Fletcher's question, the problem comes in is that this wasn't just a case that was 13 years after the fact. The issue was raised at the time of appeal in a writ, so it came up within a year or two. Counsel was admitted in the record that he had read the briefs or had seen the briefs and read the briefs. There was communication by the attorney who handled the original writ. She conveyed to him the The problem comes in is that I understand that we had a credibility issue, and the judge did make findings, but unfortunately, I do truly believe that there is clear error in the findings, because there isn't any support. Ms. Koenig Well, counsel, I'm having a hard time accepting that argument. We have something we don't usually see in a he said, she said credibility contest. We've got the contemporaneous jail recordings of conversations that your client had with his wife, his girlfriend, whoever else he chose to talk with, which are viewed in the light most favorable to the factual findings corroborate the conclusions that the district court made, and it's a pretty plausible, factual finding in my view of the record. If I can, if I can go back, back to that part of the problem with the recordings is they all occurred after the fact. The very first recording, well, some of them occurred prior to the March 12 hearing in Santa Clara Supreme Court, but our position in March 5, in particular, where he rather vehemently and colorfully, I think that was the eighth reject, which is before the hearing. Ms. Koenig Right. The March 1, which was the first conversation, he said he was hoping they'd give him a plea. So he hadn't heard that whether there was a plea at that point in time. According to Mr. Cordova's testimony, and I don't think there's anything to controvert that, he first learned about a possibility of a motion to dismiss, which counsel really, I mean, if you listen to the transcripts, he was, the client was completely sold on this motion as it was going to be his get-out-of-jail card. And he wouldn't have known that. He knew nothing about it until it was presented. Had counsel given him the information about the plea at the very beginning, when he first got it, and told him, look, they offered you 12 years, he's got 31 years to life or 26, whichever way you would look at it, if the charges weren't going to be, if the charges weren't going to be 12 years or 12 years, he has no option. It's a simple case. It's a possession. There are no defenses. Counsel then comes up and says I've got this motion. Now, nothing's to controvert that he, we know he knew about the plea on the 8th because of the recorded conversation. Had he known about it early on, before the 4th or 5th, and that's, you know, there's no clear, everything about when it was made is speculation. They don't, none of the DA or counsel, counsel didn't remember anything. This is a case that I would remember every detail on because it was the case from hell, quite frankly. And there's no way, I mean, you get those cases where you just have every little fact down and you remember everything because it was more than you bargained for. And I'm sure this is it, and I find it, even though the Court said that, you know, found differently, everything the counsel said was I don't know, I don't recall, I don't remember, except for there was a 12-year offer, and I told him, and he said F them. He never went back. This is a client that he had represented a number of times. He never made any efforts by his own admissions because he said the client wouldn't take it. Well, probably the only reason he didn't is because he listened to the recordings. And that, I mean, according to the client, they didn't discuss it. He kept trying to get the attorney to, you know, see if there was a better offer, but they didn't discuss it. But the timing is important because if we go back to had, if the offer was made and then it's delayed a week, well, all of a sudden counsel comes up with this motion that's his, as I said, get out of jail free card, and, you know, are you going to say, well, 12 years versus this motion? And he's not told of the time limitation. There was no evidence at all that he was ever told of the time limitation. And, in fact, I would Well, what about the testimony by the ADA that she said to his lawyer, you need to have come to Jesus talk with your client. And then she sees the lawyer having a conversation with the client right after she says that to him. But the lawyer did not ever say, he said he never discussed it. Yeah, there was nothing to corroborate that. And if that was presented to the client at that point in time, it would have been something new. Because if you listen to all the tapes and you look at everything that was written, there's never any time limitation given. If he had said, look, I've got to make this decision, if he's talking to the people who are most Well, we do have testimony from the ADA that she put a time limit on it. She put it on, but it wasn't conveyed. And we have testimony from the attorney that he would have conveyed whatever the offer was that was made to him to his client. And that goes to my argument about, I think that if we were to allow an attorney to just say, well, it's my custom and practice, so what do we have? We have no evidence whatsoever. I don't know. I don't recall. I don't remember. But that's not clear error. The problem I'm having, counsel, is you're asking us to retry the facts, and we can't do that as a court of appeal. I'm not asking to retry the facts. I just think that there is clear error in the findings because there was nothing to support it except custom and practice. And custom and practice And the tape recordings. Well, the tape recordings, they don't, they don't, they actually corroborate my position that there was no evidence that he was told that there was a time limit. Because if there's a time limit and I'm trying to figure out what to do They're consistent with the idea that he wouldn't have taken the plea anyway. I, well, somewhere in those recordings, there would have been mentioned. And when the DA Mentioned of what? Mentioned that there was a time limitation put on there. Not necessarily. Oh. Not necessarily. I mean, I I'm an inmate, not necessarily. Well, if you're talking to your family and the people who are most interested in your life and you're trying to make decisions, then I think the hardest thing is you need to get, you know, this is the only time you can communicate. So he's going to say, look, it's only going to be good. That's all speculation. It is what it is. The tapes say what they say. That's the problem Well, the tapes say, but there is nothing in there. But the district court made the determination that the tapes convinced him that the attorney was more credible. That, well, then that goes back to my point that the tapes are after the motion came into play. And my client testified at the hearing, and I think it said, I'll have to find the page in the record, but he did testify that it comes down to, had he known about the offer prior to coming up with the motion, he would have taken the deal. But he's found not credible. So what do we do with that? Well, I mean, not credible. I mean, he's lived this. I think we understand your position. We've got the record. You're out of time. And we will look at it again. We will look at it again. Thank you. All right. Good morning. Jill Thayer on behalf of Respondent. I'll just address the issue of the timing, the timing. Yes, what we really want you to tell us is, is there any place in the record where it has a limit on this offer? The best we have is Mr. Wright saying, if the district attorney had put a time limit on the offer, I would have conveyed that time limit to my client. And the district attorney did say she told Mr. Wright there was a time limit on the offer. That's the best we have. That's our best evidence in this case. And it's a tough case. I'll just real quickly, well, to make it an easy case, you can just look at the prejudice, really, because even after he lost the motion to dismiss, he was telling his friends and family or his whatever, the different people in the recordings, that I never would take this plea ever, ever, ever. He was insulted. He thought it was a misdemeanor. He thought, correct, ever. He was not, in fact, after he got a hung jury in the first one, he still says, I'm going all the way with this. Maybe the three strikes law will change. Something like that will happen. So really, to make this an easy case, just look at prejudice. But to discuss the whole competency issue, I'll just real quickly talk about petitioners making the argument that if he had heard about the offer before he knew anything about the motion to dismiss, he would have taken it, which that's questionable given the fact that even after he lost the motion to dismiss, he still rejected it. But we'll just set that aside. The offer didn't exist until the motion to dismiss was in mind, okay? Because it was conditioned on the motion to dismiss. So there's no way he could have found out about this offer without also knowing about the motion to dismiss. That's impossible. The district attorney heard about the motion to dismiss. Let me make sure I understand what you just said. Okay. Are you saying that the offer wasn't made until the district attorney learned from defense counsel that he intended to raise the legal issue with regard to the Dirk or Dagger? She could not recall whether she heard about the motion to dismiss directly from the defense attorney or when she was listening to those monitor conversations. She couldn't recall exactly how she learned. And the motion to dismiss wasn't filed until later. Well, the hearing was May 1st. The hearing on the legal motion. May 1st, right. I know that it was filed after he's talking and writing the letters about I'm not taking this offer. She testified that she heard, somehow she heard that there was a motion to dismiss about to be filed, whether Mr. Wright said I'm going to be filing this motion to dismiss or whether she heard the jailhouse tape saying my attorney wants to file a motion to dismiss. In any event, she heard something about a motion to dismiss. So then she says, and she didn't want to, some people in her office said I want you to make this offer, a 12-year offer open until the hearing on the motion to dismiss. And it's not the date of the filing. It's the date of the hearing, May 1st. So she makes this offer. So what petitioner is arguing now is, well, gee, if he had heard the offer before he knew anything about the motion to dismiss, he would have taken the offer because he wouldn't have any other hope, right? He would have taken it, 31 years or 12. But, well, first of all, the facts don't bear that out because he lost the motion to dismiss. But it wouldn't have happened that way. That's what I'm saying. I'm saying it couldn't have happened. And if his attorney said I got a 12-year offer and you have no other hope and never said anything about the motion to dismiss, that would have been incompetent. I mean, he had to tell his client that he was thinking about filing this motion. And that motion got argued all the way not to the Ninth Circuit, but it got argued all the way up California. It got argued at the district court level. I mean, it had some basis. It had some weight to it. So that's my argument about the timing. It couldn't have happened. I think what you're saying is that the most plausible version of the record is the factual findings that the district court made. Thank you. Yes, yes. That is correct. Well, I understand. I'm just trying to get the gist of it. You can come over here. But that's my argument about the timing. It couldn't have happened any other way. And the fact that his visits don't make the time limit, I don't think that outweighs the district court's findings that Mr. Wright, in conformance with his custom and practice, told him of the time limit. But just to make your jobs easily, just prejudice. There's no prejudice here. If there aren't any other questions, I'll submit that. Nope, you're out of time, counsel. I'm sorry. We've got too many cases on the calendar this morning. The case just argued is submitted.
judges: Fletcher B. , Tallman, Rawlinson